UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

RECEIVED

OCT 3 1 2023

BY MAIL

MARION M. CHAPMAN,
      Petitioner,

VS.                                   Case No. 0816-CR04775-01

CLAY STANTON, Warden,
      Respondent.

Mr. Chapman petition this Court for Application for Rule 91.02 Writ for state habeas Corpus. Petitioner challenges his 2010 convictions and sentences which were entered in the Circuit Court of Jackson County, Missouri. Mr. Chapman was sentenced to 22 years on 2nd degree murder and 30 years on armed criminal action on run together.

On August 18th 2008, Mr. Chapman was attached by Mr. Stevenson with a knife, he stabbed Mr. Chapman in the arm and they started tussling over the knife. Mr. Stevenson was like "I'm going to kill you." They both eventually fell on the floor. Mr. Chapman said that Mr. Stevenson was really trying to kill him as he's trying to wrestle the knife from Mr. Stevenson.

Mr. Chapman finally get the it and thinking he could just run up out of there. That didn't happen. Mr. Stevenson started going for Mr. Chapman's neck, trying to choke him out, telling Mr. Chapman he's going to kill him. Mr. Chapman said the only thing left for him to defend himself was to start swinging the knife. Mr. Chapman finally made it to the other room where his sister Cassandra Chapman was, he told her that Mr. Stevenson was trying to kill him and they need to leave. After they left, they went seperate ways, as Mr. Chapman walked the streets trying to understand what had just happened. A day later he go's to his mother's house. His mother knew that Mr. Chapman (her only son) is ready to take his life, so she calls the police and tell them what her son told her. (Tr 768-789).

## CLAIM 1

Petitioner, Mr. Chapman was denied his constitutional rights to Due Process, Equal Protection of law in violation of the 1st, 5th, 6th, 8th, & 14th Amendments of the constitution as well as article I, Section 2, 10, 12, 14 & 18a Missouri Bill of Rights: Cite case: State v. Jensen, 524 S.W. 3d Lesser included. The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for convicting Mr. Chapman of the particular included offense. (Tr. pgs 832- 834, If you were attacked by Mr. Stevenson, that that would create sudden passion and your response would be to attack back, okay? And if that attack back was consistent with self-defense, you would be found not guilty.)

## CLAIM 2

(837 The Court: 20 years. And I'm very confident that she understands everything about lesser included instructions and that, in fact, I know that she has thought about it, because we discussed the possibility of looking at the Bealer case and even looking at instructions below voluntary manslaughter, which I think is a different analysis. But without having counsel, I'm not requiring anybody to say anything, but it certainly seems to me that it is the court's very strong impression that the desire to not request the voluntary manslaughter is a product of trial strategy that's been generated by counsel and the defendant.

## CLAIM 3

Tr.pgs 897, "At 2:57 p.m, the jury communicated with the court through a document marked as Court's Exhibit B." The question, as I understand it is regarding instruction number 5, second-question. Please clarify the wording "practically certain," okay? So what I intend to do is send up a note that says. "Under the law I cannot expend on the instructions that have been given to you." "You must be guided in your deliberations by your collective memory of the evidence and the instructions of law that have already been provided to you." Case cite: Middleton v. McNeil, 541 U.S. 433.

## CLAIM 3

(922-929, The Court: So what the Sentencing Commission does in the simplest of terms is, first

(3)

of all, they have a chart that exists for the crime that one committed. Then they consider the criminal history of the Defendant. Then they consider whether the facts and circumstances of the case would be considered mitigating; that means not as serious as the average case. Presumptive, which would been the average case or the most typical case. And then aggravating, which would mean a case more aggravated than the typical case.

And they then deal with the criminal history, and there are five levels of criminal history. And those are based upon felony convictions — for the most part, they're based on felony convictions, misdemeanor convictions, and the number of times you've gone to prison. That's the main component of the criminal history.

Now, if you had a criminal history score of 1, which would mean you had very little involvement in the criminal justice system prior to this offense, and you committed this offense, a mitigating sentence would be 10 years according to the Commission, the recommended sentence. Presumptive sentence would be 15. And an aggravating sentence would be 25. If you were right in the middle, criminal history score of 3, the numbers would be 15 for mitigating, 20 for presumptive, and 25 for aggravating. (924-925.

Let me put it to you this way. If you consider this to be a level 5, I think if you look at each of these felonies, the three felonies, they were evaluated and he pled guilty to probation and then probation was revoked. So, you consider this level 5 offense, a reasonable argument could be made that these

(4)

scores somewhat overemphasize his criminal history.

## CLAIM 4

(926- 929, The Court: But I must also tell you that, in a sense-- you can argue he's remorseful, but in a sense he claims he acted in self-defense, and I think the physical evidence truly doesn't show that. You've got basically one individual who is barely marked at all and one individual that has 29 stab wounds.

Armed criminal action is a separate crime, and it's a crime for using a dangerous instrument or a firearm in the course of a felony. It is not an 85 percent crime. It is parolable after the first three years of sentence. Armed criminal action, it's the legislature's intent to punish people who used weapons and dangerous instruments, but, in essence, in this case, although lawful, it's the same crime. So at times what I have done is I have given different sentences when there is an armed criminal action and there is an underlying felony, sometimes I give different sentences, because I recognize that the underlying sentence will be an 85 percent crime and the other sentence will be a crime where there will be parole, Parole will be available at a sooner point in time. Therefore, if someone is paroled, you still have the protection that, if that person has issues, the parole board has a string on that person and that person can be sent back if he or she doesn't adopt to the circumstances.

(5)

So with that being said, it is my intention to impose a sentence on the murder case less than the sentence on the armed criminal action. And with those reasons being said and because of the viciousness of the offense, the Court hereby imposes a sentence, on Count 1, of 22 years in the Missouri Division of Adult Institutions. Those sentences shall run concurrently with each other. Cite: §211.271 R.S. Mo. Mr. Chapman was a juvenile when he was 17 and 18 years old.

## CLAIM 5

(833 - 836, "Sudden passion" means passion directly caused by and arising out of provocation by another which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficiently to substantially impair an ordinary person's capacity for self-control. What that means is -- what it would mean in this case would be that, if you were attacked by Mr. Stevenson, that that would create sudden passion and your response would be to attack back, okay? And if that attack back was consistent with self-defense, you would be found not guilty. If it was not consistent with self-defense, but it was still sudden passion, you would be found guilty of voluntary manslaughter, instead of murder in the second degree. Voluntary manslaughter carries a lesser punishment than murder in the second degree. It only carries up to 15 years, where murder in the second degree carries up to life.

(6)

## CLAIM 6

Petitioner is entitled to proceed on the present petition for writ of habeas corpus, the miscarriage of justice exception would allow successive claims to be heard. In appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice must yeild to the imperative of correcting a fundamentally [" 321] unjust incarceration. Cite: Engle v. Isaac, 456 U.S. 107, 135, 71 L.Ed. 2d 783, 102 S.Ct. 1558 (1982).

Petitioner Mr. Chapman has presented evidence of merit, that he is actually innocent of murder in the second degree and armed criminal action. A miscarriage of justice has occurred at his 2010 conviction and sentences for second degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County Missouri. While Mo. Rev. Stat § 565.025 (2000) provides that voluntary manslaughter is a lesser included offense of 2nd degree murder, it is not a nested lesser offense. The differential element is that voluntary manslaughter requires the jury to find that the defendant acted under a sudden passion arising from adequate cause Mo. Rev. Stat § 565.023 (2002). To commit a second degree murder by knowingly causing the victims death without acting under sudden passion and committing the offense of voluntary manslaughter.

## CLAIM 7

Brady violation has happened at trial. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable

(7)

jury would have convicted him in the light of the new evidence. (Officer Justin Kobolt was Subpoena to testify for defendant Mr. Chapman about the stab wounds that he saw on defendant, Mr. Chapman's body. Mr. Kobolt did not appear at trial to testify for Mr. Chapman Mr. Kobolt did not appea at trial which is a violation of Mr. Chapman's 6th Amendment, to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Mr. Johnny Ward was Subpoena to testify for defendant Mr. Chapman about his knowledge of Mr. Stevenson's violence towards Mr. Chapman. Counsel, Mary Bellm did not call Mr. Ward into the court room to testify. This is a violation of Mr. Chapman's 6th Amendment. Cite: Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 10 L.Ed. 2d 215 (1963).

Petitioner, Mr. Chapman testified at his trial that he acted in Self-Defense from the attack by Mr. Stevenson in which the evidence of photo taken by officer's Ms. Green and Ms. Thompson (Stab wound).

Self-Defense, a person was authorized to use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself from what he reasonably believes to be use or imminent use of unlawful force by such other person. Mo. Rev. Stat. § 563.031.1

(8)

During the hearing for Motion to Suppress Evidence, officer Kobolt testified that the prosecutor Thorisa Crayon told him that officers Ms. Green and Ms Thompson did not take pictures of Mr. Chapman's legs.

Goverment Intrusion Into Attorney/Client Relationship
Once the right to counsel attackes, any Government intrusion into that relationship is a violation of the Sixth Amendment. The United States Supreme Court has addressed this issue and created a formula for lower courts to analyze cases involving Government intrusion into attorney/client relations. Cite: Weatherford v. Bursey, 429 U.S. 345 (1977), outlined four (4) factors relevant to the determination of whether a defendant suffered injury from the intrusion: (1) Whether the government purposely intruded into the attorney/client relationship: U.S. v. Schwimmer, 924 F. 2d 443 (2nd Cir. 1991)

(2) Whether any evidence offered at trial was obtained directly or indirectly from the intrusion: U.S. v. Dyer, 821 F.2d 35 (1st Cir. 1987)

(3) Whether the prosecutor obtained any details of the defendant's trial preparation or strategy: Schwimmer, supra.

(4) Whether the overheard conversation was in any other way substantially - detrimental to the defendant.

(9)

(Tr. pgs 674 - 680 Direct Examination by Ms. Otto, questioning detective Melissa Thompson and detective Ms. Green about the photographing of Mr. Chapman and any injuries and perishable evidence. Detective Thompson said that she took photographs of Mr. Chapman's arms, "There was a small linear cut on the left arm near the elbow, it was approximately three-quarters inch in length that was a fresh cut." The dried blood had started scabbing." "You can tell when a wound is fresh as opposed to completely healed and no more scab left."

Question: Did you have him remove his pants?

Answer: No

Question: And why didn't you have him do that?

Answer: Standard procedure, I will ask are there any other injuries that you have that I need to photograph or so I can photograph them. Detective Green and the suspect were there, and there were no other injuries indicated to be photographed.

Ms. Bellm: My objection is they're commenting on his right to remain silent, and any statements that he made, they were unMirandized. I'm objecting on the Fifth and Fourteen Amendments of the U.S. Constitution, Missouri Article 1, Section 10, and 18A.

(10)

Mr. Chapman cite: <u>Middleton v. McNeil</u>, 541 U.S. 433, Supreme Court decision date: May 3, 2004.

Jury Questions to the Court, Clarification of Instructions.

Mr. Chapman's case is the same as these reversible acts.

There are **10** pages of Exhibits with this petition, and there are Exhibits A - L attached.

## Conflict of Interest

Mr. Chapman's trial attorney Mary Bellm was aware that the prosecuting attorney Thorisa Crayon had previously prosecuted a case against Mr. Chapman Mary Bellm should have told the court about this conflict of interest, but chose not to. Prosecutor Thorisa Crayon should have been disqualified by the trial court. Ms. Crayon told the jury to find Mr. Chapman guilty on his prior cases (unrelated criminal charges lodged against him), and during closing arguments the prosecutor lied to the jury when she said that she never knew Mr. Chapman prior to this case. Cite: <u>State v. Monday</u>, 257 P. 3d 551 (Wash. 2011).

Prosecutor should be disqualified <u>State ex rel. Winkler v. Goldman</u>, 485 S.W. 3d, 783, 790 (Mo. App., E.d. 2016) (Tr. pg. 880 "Ladies and gentlemen, I have no idea what kind of person the defendant was. I didn't know him before.)

Trial strategy altogether Kaur v. Maryland, 141 S. Ct. 5, 7 (2020)

No actual prejudice for this claim need be shown "justice must satisfy the appearance of justice" State v. Lemasters, 456 S.W. 3d 415, 423 (Mo. banc 2015)

For prosecutor to be disqualified, the defendant does not need to prove actual knowledge, actual prejudice, or even actual impropriety, State ex rel. Burns v. Richards, 248 S.W. 3d 603, 605 (Mo. banc 2008).

This Court has stated that "a prosecutor should not serve if he has access to privilege information which might be used to the defendant's detriment. "State v. Wacaser, 794 S.W. 2d 190, 196 (Mo. banc 1990) This case therefore presents a question of general interest or importance.

## Abuse of Discretion
Mr. Chapman never did waive the conflict of interest cite: State v. Ross, 829 S.W. 2d 948.

## Plain Error, Miscarriage of Justice

Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Petitioner, Appeals the August 29, 2023 Danial and other previous danials for authorization to file a second or successive application for rehearing a writ. A Miscarriage of Justice exception to overcome various procedural defaults.

Petitioner, a convicted state prisoner currently confined at the Northeast Correctional Center in Bowling Green, Missouri, has filed pro se a petition for writ of habeas corpus. Petitioner challenges his 2010 convictions and sentences for second degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.
As noted in Petitioner's previous case, Petitioner already has filed a previous habeas corpus "Equitable Tolling," citing: Holland v. Florida, the United States Supreme Court addressed the circumstances in which a federal habeas petitioner can invoke the doctrine

13

of "equitable tolling." Holland held that a habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.

Statute of Limitations, Antiterrorism & Effective Death Penalty Act.

The United States Supreme Court has applied the miscarriage of justice exception to overcome various procedural defaults. These include "successive" petitions asserting previously rejected claims that could have been raised in a first petition, failure to develop facts in state court, and failure to observe state procedural rules, including filing deadlines. The miscarriage of justice exception, the Court's decisions bear out, survived passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) 110 Stat. 1214. These decisions seek to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case. Sensitivity to the injustice of incarcerating an innocent individual should not abate when the

14

impediment is the AEDPA's statute of limitations.
Citing: Mc Quiggin v. Perkins, 569 U.S. 383
Actual Innocence & Miscarriage of Justice, Exceptions
Untimeliness, although not an unyielding ground for
dismissal of a petition, does bear on the credibility
of evidence proffered to show actual innocence.
The standard the United States Supreme Court
adopted in Schlup v. Delo is demanding. The
gate way should open only when a petition presents
evidence of innocence so strong that a court
cannot have confidence in the outcome of the
trial unless the court is also satisfied that the
trial was free of nonharmless constitutional error.
Cite: United States v. Arbuckle, 2016 U.S. Dist
LEXIS 36170 Factual Innocence.


Mr. Chapman's prior motion to vacate or set aside
the verdict (Section 547.031). This act provides that a
prosecuting or circuit attorney may file a motion
to vacate or set aside the judgment at any time if
he or she has information that the convicted
person may be innocent or may have been erroneously
convicted. Mr. Chapman was denied, reason is because
Section 547.031 does not authorize a defendant to
file a motion under the previsions of that statute.

15

The circuit court in which the person was convicted shall have jurisdiction and authority to consider, hear, and decide the motion. Upon the filing of such a motion, the court shall order a hearing and issue findings of fact and conclusions of law on all issues presented. The Attorney General shall be given notice of hearing of the motion and shall be permitted to appear, question witnesses, and make arguments in the hearing.

This is clearly a due process violation by the Judge Patrick William for calling the 547.031 a Rule 24.035 or Rule 29.15 motion Case: 2216-CV00399, filed 01-11-2022. "Exhibit G".

        Mr. Chapman filed another Section 547.031 on 10-21-2022 in hopes of being given an court date hearing "Exhibit H."

Pg (2), Claim 1. Petitioner, Mr. Chapman was denied his constitutional rights to Due Process Equal Protection of law in violation of the 1st, 5th, 6th, 8th, & 14th Amendments of the constitution as well as article I, Section 2, 10, 12, 14 & 18a Missouri Bill of Rights. Cite case: State v. Jensen, 524 S.W. 3d Lesser included. The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for convicting Mr. Chapman of the particular

16

included offense. (Tr. pgs 832-834, If you were attacked by Mr. Stevenson, that that would create sudden passion and your response would be to attack back, okay? And if that attack back was consistent with self-defense, you would be found not guilty.), (Tr. 768-789).

(Tr. pg 873 - 880, The jury saw pictures when Mr. Chapman was arrested, they saw pictures of the injuries, but not the photograph of his leg, but the injury on his arm. Exhibit No 72. The prosecution duplicative them. Mr. Stevenson was the person that had the motive. It went from an argument, to Mr. Stevenson came across the bed with a knife at Mr. Chapman. His attack on Mr. Chapman have a reasonable fear that Mr. Chapman's life was in danger. The crime scene technicians went into that crime scene, and they analyzed it. They didn't Lumenol the knives because it was clear they had blood on them. They didn't know whose blood was on the blades of those knives. They didn't know whose fingerprints were on those knives that were in there. They didn't come to the jury with any of the evidence from the crime scene that had blood on them. And the burden of proof was on the State to prove beyond

a reasonable doubt to the jury that Mr. Chapman did not act in lawful self-defense; that he was not fearful of Eugene's threats to him; that he was not fearful of Eugene's injuries to him with a knife; that this was not a fight where Marion Chapman was afraid that he was going to receive serious physical injury. This was a close close-in fight.

(Tr. pg 880, Ms. Crayon: Ladies and gentlemen, I have no idea what kind of person the defendant was. I didn't know him before. I'm not commenting on that, whether he was a callous or uncaring person all the days before this.)

(Tr. pg 908, "Defendant's criminal history dates back to when he was 17 years old, and we don't know what happened as a Juvenile, but in this report, at age 17, It started.") (Tr. pg 909, The second thing I want to point out about his criminal history is his inability to conform to the rules and the laws even when he's on probation and parole.)      Mr. Chapman cite: State v. Monday, 257 P.3d 551 (Wash. 2011). The Court explained that the rationale for the rule announced in Monday is similar to that of the U.S. Supreme Court's for

18

creating a separate set of standards in
cases of alleged racial bias in Pena-Rodriguez
v. Colorado, 580 U.S. 206 (2017) (explaining that
while all forms of inappropriate bias undermine
the trial process, "there is a sound basis to treat
racial bias with added precaution") (The Court
held that the Sixth Amendment requires that
the no-impeachment rule, which prohibits
inquiry into jury deliberations, does not apply
where a juror makes a clear statement
indicating that he or she relied on racial
stereotypes or animus in convicting the defendant).
Cite: State v. Zamora, 512 P.3d 512 (Wash. 2022).


                    During Closing Arguments
Closing argument by Prosecutor Ms. Otto (Tr.pg, 864-865)
Ms.Otto clearly undermine the trial when she makes
a misstatement of the law to the jury about the
law of self-defense. Cite: Middleton v. McNeil, 541
U.S. 433, Supreme Court decision date : May 3, 2004.


Trial Judge Charles Atwell to the 60 juror selection
that he knew prosecutor Thorisa Crayon way back
before she was of legal age, which made them
all uncomfortable as sounds of curiosity (AWE) is
heard from the juror selection. The Judge Atwell knew

19

they were wondrous, so he tried to clearify his statements. It had become obvious during the entire trial that Judge Atwell and Prosecutor Ms. Crayon were apparently working together on every way to undermine the sixth amendment. Detective Kobolt should have been held in contempt of the court for not honoring the subpeona to testify on Mr. Chapman's behalf, as a witness to the stabwounds and cuts on Mr. Chapman's body. Cite: Commonwealth v. Saferian, 315 N.E. 2d 878 (Mass. 1974).

     The duty to investigate is fundamental to effective assistance of counsel the Court observed, because strategic decisions in defending a client can only be made when sufficiently informed of all possible options. Cite: Commonwealth v. Long, 69 N.E. 3d 981 (Mass. 2017). When an IAC claim is reviewed, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances... [and counsel] has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Cite: Strickland v. Washington, 466 U.S. 668 (1984).

Trial counsel Ms. Mary Bellm was ineffective
for not requesting a continuance to have
Mr. Kobolt to appear at trial for the testimony
of defendant Mr. Chapman. Trial counsel's performance
fell "measurably below that which might be expected
from an ordinary fallible lawyer." Cite: Commonwealth
v. Pope, 188 N.E. 3d 96 (Mass. 2022), the Court wrote:
[E]vidence is exculpatory if it provides some
significant aid to the defendant's case, whether
it [(1)] furnishes corroboration of the defendant's story,
[(2)] calls into question a material, although not
indispensable, element of the prosecution's version of
the events, or [(3)] challenges the credibility of a
key prosecution witness." Use of Mr. Kobolt's testimony
could have raised reasonable doubt. And trial counsel's
performance was constitutionally ineffective.
Cite: Weaver v. Massachusetts, U.S. Sup. Ct. 2017.

Petitioner, Mr. Marion Prays that this honorable court
grants his motion for relief of vacate or remand
his convictions and sentences.

21

# EXHIBITS

Rec'd

Petitioner's Exhibit A No. 23-2739                    1
Description : Order of Denial

Petitioner's Exhibit B No. 20-0934-CV-W-DGK-P         1
Description : Denial

Petitioner's Exhibit C No. 21-1061
Description : Denial

Petitioner's Exhibit D No. 23-1162
Description : Denial

Petitioner's Exhibit E No. 2316
Description : Denial

Petitioner's Exhibit F No. 23-00455-CV-W-GAF-P
Description : Denial

Petitioner's Exhibit G No. 2216-CV00399
Description : Denial of 547.031

Petitioner's Exhibit H No. 2216-CV23859
Description : Deniel of 547.031

Petitioner's Exhibit I No. 2216-CV00399
Description : Amended Judgment of Dismissal

Petitioner's Exhibit J
Description : Denial of Application for Executive Clemency

Petitioner's Exhibit K No. WD75844
Description : Deniel or Recall Mandate

Petitioner's Exhibit L No. 2:23-cv-31-CDP
Description : Memorandum And Order Of Transfer

# EXHIBIT S

Rec'd

Petitioner's Exhibit A No. 0816-CR04775-01  Pg 2 (758-761),
Description : Transcript of trial as evidence (Tr. 768-789)(832-834)

Petitioner's Exhibit B No. 0816-CR04775-01    P. 3 (873-876),
Description : Transcript Evidence (837),(897), (922-929)

Petitioner's Exhibit C No. 0816-CR04775-01    Pg. 4 (877-880),
Description : Transcript Evidence    (924-925)

Petitioner's Exhibit D No. 0816-CR04775-01  Pg 5 (902-905),
Description : Transcript Evidence    (926-929)

23

Petitioner's Exhibit E No. 0816-CR04775-01   Pg 6
Description: Transcript Evidence. (833-836)(906-909)

Petitioner's Exhibit F No. 0816-CR04775-01   Pg 10
Description: Transcript Evidence   (674-680)(910-913)

Petitioner's Exhibit G No. 0816-CR04775-01.   Pg 11
Description: Transcript Evidence   (880)

Petitioner's Exhibit H No. 0816-CR04775-01   Pg 15
Description: Transcript Evidence   (918-921)   (547,031)

I have read the foregoing petition and hereby
verify that the matters alleged therein are
true. I certify under penalty of perjury that the
foregoing is true and correct.

Executed at Bowling Green, Mo.
9-19-2023

Marion M. Chapman
MARION M. CHAPMAN

24

State of Missouri   Marion M. Draper
County of Pike
Subscribed & Sworn this 20th day of September 2023
Public Notary
Cherry Pasley

CHERRY PASLEY
Notary Public, Notary Seal
State of Missouri
Audrain County
Commission # 12416577
My Commission Expires 04-18-2027

25